UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CALIP J FARMER, | § | |
| TDCJ # 1795964, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-0108 |
| | § | |
| LORIE DAVIS,[1] *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Calip J. Farmer, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), brings this civil rights suit alleging that he was denied adequate medical care and otherwise denied his rights under the Eighth and Fourteenth Amendments. Plaintiff proceeds *pro se* and *in forma pauperis*. On April 18, 2018, the Attorney General submitted a *Martinez* report (Dkt. 30).[2] Plaintiff filed a memorandum (Dkt. 32) in response to the *Martinez* report.

The Court is required to scrutinize every complaint filed by a plaintiff proceeding *in forma pauperis* and dismiss the case, in whole or in part, if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

---

[1] Lorie Davis, the current director of TDCJ, is automatically substituted for William Stephens, the defendant named in Plaintiff's complaint. FED. R. CIV. P. 25(d).

[2] An administrative report submitted by state officials pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (a "*Martinez* report"), is a tool to assist courts in deciding frivolity under 28 U.S.C. § 1915. *See Norton v. Dimazana*, 122 F.3d 286, 292-93 (5th Cir. 1997); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

§ 1915(e)(2)(B). Having reviewed the pleadings, the *Martinez* report, the parties' briefing, the applicable law, and all matters of record, the Court concludes that all of Plaintiff's claims must be **DISMISSED** for the reasons that follow. The Attorney General's motion to seal the *Martinez* report and its exhibits (Dkt. 29) will be **granted** because the filings contain Plaintiff's confidential medical information. Plaintiff's motion to compel production of additional documents (Dkt. 31) will be **denied**.

I.  **BACKGROUND**

   A.  **Procedural Background**

Plaintiff's complaint (Dkt. 1) alleges that the defendants delayed medical care for an injury, brought false disciplinary charges against him, and improperly housed him. On September 7, 2017, the Court entered an Order to Show Cause (Dkt. 20) and warned Farmer that his complaint failed to state a cognizable claim. On November 14, 2017, Plaintiff filed a response (Dkt. 23) to the order to show cause. On January 18, 2018, the Court entered an Order (Dkt. 24) for a *Martinez* report, which the Attorney General's office filed on April 18, 2018. The *Martinez* report (Dkt. 30) attaches Farmer's medical records from TDCJ and UTMB, his grievance records, and his classification records. Plaintiff then filed a memorandum (Dkt. 32) in response to the *Martinez* report.

   B.  **Factual Background**

Farmer's claims in this lawsuit stem from an injury to his left foot when it was slammed by his cell door on January 31, 2015, at approximately 12:30 a.m. He states that he was asleep in his bottom bunk at the time and that Officers Abu and Adeleke, both of whom are defendants in this action, were "racking up C-14 tank" and "rolling the

door" (Dkt 1, at 2).³ He alleges that the officers "failed to walk down the run and say clear the door [which] means for everyone to stand away from the door" (*id.*), even though institutional procedures required them to do so (Dkt. 23, at 1). When the door to Farmer's cell opened, it slammed and injured his left foot (Dkt. 1, at 2). Farmer alleges that the officers' failure to follow procedure caused his injury (Dkt. 32, at 3).

Farmer claims that, after the injury, Officers Abu and Adeleke refused to help him get medical care, laughed and joked about the injury, and told him he would have to walk to the clinic alone if he wanted treatment (Dkt. 1, at 6; Dkt. 32, at 1). Plaintiff walked to the main hallway on his own until another officer saw him and sent a wheelchair (Dkt. 1, at 2; Dkt. 23, at 2). He then went in the wheelchair to the medical department, where he received ice, pain medication, and a crutch pass (Dkt. 1-2, at 3; Dkt. 30, at 1, 3; Dkt. 30-1, at 42, 256-59). Plaintiff states that the doctor informed the officer "that Plaintiff could not walk and had to be moved from C-14 cell 215 bottom" (Dkt. 1, at 3).

Farmer does not contest that he received frequent care for his injury in the months that followed. On February 12, at a follow up appointment, he received a two-week crutch pass and was "medically unassigned" from prison work assignments because of his foot pain (Dkt. 30, at 3; Dkt. 30-1, at 41, 94-96, 308). On February 19, he received x-rays (Dkt. 30, at 3; Dkt. 30-1, at 300). He had several follow-up appointments in March and May (Dkt 30, at 3; Dkt 30-1, at 86-92, 247-53). On July 2, 2015, medical records indicate that Plaintiff requested that his work restrictions be removed because his foot

---

³ Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

had healed (Dkt. 30, at 4; Dkt. 30-1, at 84 (provider notes that Farmer "[h]ops up and down to 'show me' how good his foot is doing now")).

Farmer initially received a disciplinary case (minor case # 20150157745) for failure to obey the officers' order to clear the door. On February 13, 2015, Farmer was found guilty at a hearing and was sentenced to loss of ten days of commissary privileges and ten days of property privileges (Dkt. 1-1, at 3). He alleges that Lieutenant Hope Croman, the hearing officer and a defendant in this suit, refused to call witnesses in violation of his rights (Dkt 1, at 3, 5). Farmer filed a grievance about the conviction and, on April 21, 2015, Warden Reescano overturned the conviction (*id.*). He claims that the reversal demonstrated that the charges against him for refusing an order were "false" (*id.*).

Within approximately twenty-four hours of his injury, Plaintiff was placed in solitary as "transient custody overflow" (*id.*). Plaintiff was in solitary for twenty-three days, until February 23, 2015. He complains that he was housed with sex offenders, causing him to be labeled as a sex offender and a "snitch." He alleges, and the exhibits to the *Martinez* report confirm, that he was assigned to solitary with sex offenders not because of disciplinary charges but merely because the unit had no beds elsewhere that could accommodate him (Dkt. 23, at 2; Dkt. 30-3, at 6 (records from February 2015 list Farmer as "mishoused" due to lack of beds); Dkt 30-2, at 4 (warden found that Farmer was "temporarily mishoused transient" in solitary "due to lack of G2 housing beds available" and that he had been moved as soon as possible)). Plaintiff alleges that the conditions in solitary were substandard and complains of broken windows, mold, lack of

heating and cooling, lack of electricity, improper storage of paint thinner, and other conditions (Dkt. 23, at 2; Dkt. 32, at 4). He also complains that Major Kendric Demyer, a defendant in this action, did not permit him to attend religious services or eat in the dining hall while he was in solitary (Dkt 1, at 3, 6).

While in solitary, Farmer made multiple requests for a change in his housing. One response to his request appears to state that he had been moved to "a house" on February 12 but, after Farmer fell in the shower, he was returned to "1 Row overflow" (Dkt. 1-3, at 7). He filed at least two grievances about his housing assignments.

On February 23, 2018, Farmer was moved from solitary confinement to segregation. Farmer claims that he was moved because a regional safety inspector found unacceptable conditions in solitary and, as a result, all inmates were moved out of solitary within twenty-four hours of the inspection (Dkt. 1, at 3). He continued to request a return to general population, and TDCJ officials informed him that they still had no space for him in other housing but that he would be moved soon (Dkt. 1-3, at 1).

On March 2, 2015, Farmer returned to general population (Dkt. 1-2, at 1). Farmer states that he continued to have swelling and pain in his foot and was unable to work at the laundry as assigned (Dkt. 1-3, at 3). On March 18, 2015, Officer Romero, the manager of the laundry and a defendant in this suit, wrote a disciplinary case (20150202355) against Farmer for failure to report to work (Dkt. 1, at 5). Farmer alleges that Romero was aware of his left foot injury. He was found not guilty of the disciplinary charge and was told that he would receive a job change (Dkt 1-1, at 13). Farmer filed grievances about his work assignment and the disciplinary case (Dkt. 30, at 4-5). TDCJ's

response to one grievance indicates that Farmer had been reassigned to the kitchen, resolving his complaint (Dkt. 30-2, at 49).

Farmer sues seven defendants: (1) TDCJ Director Lorie Davis, as the person "legally responsible for the operation of the Stringfellow Unit and for the welfare of all the inmates in that prison" (Dkt. 1, at 1); (2) Warden Frankie Reescano of the Stringfellow Unit, as the person "legally responsible for the operation of Stringfellow Unit and for the welfare of all offenders in that prison" (*id.* at 2); (3) Major Kendric Demyer, who allegedly prevented Farmer from going to church or dining hall while he was in solitary; (4) Officer Masary Abu, who allegedly failed to follow procedure before rolling the cell doors and refused to help Farmer get immediate medical care after his injury on January 31, 2015; (5) Officer Taiwo Adeleke, who allegedly engaged in the same conduct and omissions as Officer Abu on January 31, 2015; (6) Officer Amanda Romero, a manager at the laundry who wrote a disciplinary case against Farmer for his failure to report to work as assigned; and (7) Lieutenant Hope Croman, the hearing officer for his disciplinary hearing regarding his alleged failure to follow officers' orders on the night he was injured, who allegedly refused to call witnesses.

Farmer seeks compensatory damages, punitive damages, and declaratory and injunctive relief (*id.* at 7-8).

## II.   STANDARDS OF REVIEW

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint

"is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. . . . A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Administrative exhaustion is mandatory under the PLRA and an inmate bringing an action regarding prison conditions under 42 U.S.C. § 1983 or other federal law must first exhaust all administrative remedies "as are available." 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 136 S. Ct. 1850 (2016); *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015). TDCJ has a formal two-step administrative grievance process. *See, e.g., Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable). The Fifth Circuit strictly enforces the exhaustion requirement. *Johnson*, 385 F.3d at 515.

The Attorney General submits Farmer's grievance records and states that many of his grievances were not fully exhausted because he did not file a Step 2 grievance after his initial grievance was denied or was resolved in Farmer's favor.

To the extent any of Farmer's grievances were not fully exhausted, his claims are subject to dismissal on that basis. In any event, as explained below, dismissal under 42 U.S.C. § 1915(e) is warranted for all of Farmer's claims.

### B. Official Capacity Claims

TDCJ is a state agency. TEX. GOV'T CODE § 493.001 *et seq*. A claim against an official employed by TDCJ in his or her official capacity is a claim against the agency, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*,

529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983. *NiGen*, 804 F.3d at 394.

To the extent Farmer sues any defendants in their official capacities as state employees, the defendants are entitled to immunity under the Eleventh Amendment from claims for monetary damages.

## C. Medical Claims

Farmer alleges that Officers Abu and Adeleke violated his right to adequate medical care when they denied or delayed his access to treatment. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). Because Farmer was, at all relevant times, a convicted felon in state prison, his claims regarding denial of adequate medical care are governed by the Eighth Amendment prohibition against "cruel and unusual" conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

To prevail on his Eighth Amendment claim, a plaintiff must demonstrate that the defendant exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the prisoner must show "objective exposure to a substantial risk of serious harm." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). Second, he must show that the defendant acted, or failed to act, with deliberate indifference to the risk. *Id*. at 345-46. Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). "The mere delay of medical care can also constitute an Eighth Amendment violation but only 'if there has been deliberate indifference [that] results in substantial harm.'" *Easter*, 467 F.3d at 463 (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)).

In this case, Farmer alleges that he was denied medical care by Officers Abu and Adeleke immediately after his left foot was injured by the cell door, because the officers told him that he could walk to the medical clinic on his own if he wanted medical attention. By Farmer's own account, however, he received assistance after only a brief delay because, once he walked down to the main hallway, other officers assisted him and took him in a wheelchair to the clinic for treatment (Dkt. 1, at 2). His claim under the

Eighth Amendment must fail because Farmer does not show that he suffered "substantial harm" because of the alleged brief delay in treatment. *See Rogers*, 709 F.3d at 410 (a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that *results in substantial harm*") (emphasis in original) (internal citation, quotation marks, and alteration omitted). Farmer does not allege any denial of, or delay in, medical care for his injured foot at any later time.[4] *See McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference claim where extensive medical records documented that the prisoner was not denied medical attention).

The Court previously informed Farmer that his factual allegations were insufficient to state a claim under relevant Eighth Amendment standards, which the Court set forth in detail, and warned Farmer that his claims would be dismissed if he could not show cause why dismissal was inappropriate (Dkt 20). In response, Farmer argued that the officers on January 31 had failed to follow internal TDCJ procedures before rolling the cell doors, that they had laughed at him, that they had forced him to walk on his own for medical care despite his injury, and that he walked to the main hallway on his injured foot until another officer provided a wheelchair (Dkt. 23, at 1-2; *see* Dkt. 32, at 1). These allegations are insufficient to state a claim under the legal standards set forth above. Even if Farmer could successfully state a claim that Officers Abu and Adeleke acted with

---

[4] As stated above, the medical records submitted with the *Martinez* report demonstrate that Farmer received multiple follow-up appointments, crutches, pain medication, an x-ray, and accommodation in work assignments because of his injury.

negligence or gross negligence, his claim would not suffice under the deliberate indifference standard of the Eighth Amendment. *See Hinojosa*, 807 F.3d at 665; *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001).

Farmer's claim for denial or delay of medical care will be dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

### D. Work Assignment

Farmer alleges that Officer Romero violated his constitutional rights in connection with his work assignment in the prison laundry. In certain circumstances, prison work conditions imposed on an inmate with medical limitations can violate the Eighth Amendment. "If prison officials knowingly put [an inmate] on a work detail which they knew would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs." *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). *See Williams v. Henagan*, 595 F.3d 610, 622 n.18 (5th Cir. 2010) ("Prison work conditions may . . . amount to cruel and unusual punishment"); *Douglas v. McCasland*, 194 F. App'x 192 (5th Cir. 2006); *Williams v. Wooten*, 119 F. App'x 625, 626 (5th Cir. 2004). Deliberate indifference is an "extremely high standard." *Domino*, 239 F.3d at 756. It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa*, 807 F.3d at 665.

In March 2015, after he returned to general population, Farmer was assigned to work in the prison laundry under the supervision of Officer Romero. Farmer alleges that he was unable to perform his duties in the laundry due to swelling and pain in his left foot. He claims Romero was aware of his injury but nevertheless, on March 18, 2015,

wrote a disciplinary case against him for failure to report to work, and that her act of writing a case against him violated his constitutional rights.

Farmer fails to state an Eighth Amendment claim against Officer Romero. First, he has made no showing or allegation that Romero was the official who assigned him to work in the laundry. *See Jackson*, 864 F.2d at 1246. Rather, he alleges merely that Romero, as the work supervisor, wrote a case against him for failing to appear for work as assigned. Moreover, Farmer does not allege that Romero or any official actually required him to perform work in the laundry after his foot was injured, nor that such work in the laundry "significantly aggravate[d] his serious physical ailment." *See id*. The Court notes that Farmer was found not guilty in the disciplinary case initiated by Romero, and subsequently received a different work assignment in the kitchen, which resolved his complaint (Dkt 30-2, at 49). *See Mendoza*, 989 F.2d at 194-95 (affirming dismissal of Eighth Amendment claim as frivolous because "the prison adequately accounted for [the inmate's] physical condition when assigning his work detail").

Farmer's claim against Romero will be dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

### E. Housing Assignments

Farmer complains that he spent twenty-three days in solitary confinement after his injury, in violation of his due process rights. He points out that his assignment to solitary was not because of a disciplinary conviction. *See* Dkt. 23, at 2. Records filed with the *Martinez* report confirm that Farmer was "mishoused" during the period at issue due to spacing considerations (Dkt. 30-3, at 6; Dkt. 1-3, at 7).

13 / 19

To the extent Farmer claims that his assignment to solitary or segregation violated the Eighth Amendment because of the allegedly substandard conditions, he fails to state a claim. A claim regarding conditions of confinement must meet two requirements: first, the conditions must have caused an "objectively, sufficiently serious" deprivation, defined as the denial of "the minimal civilized measure of life's necessities." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (citing *Farmer,* 511 U.S. at 834).[5] Second, prison officials must have acted with "deliberate indifference" to the plaintiff's health or safety, which means that the official knows that the inmate faces a "substantial risk of serious harm" but "disregards that risk by failing to take reasonable measures to abate it." *Id.* at 561 (internal citation and quotation marks omitted). The official must be subjectively aware of the facts from which the inference could be drawn and must actually draw the inference. *Id*.

Even if the Court were to assume that Farmer pleaded facts alleging a serious deprivation of "the minimal civilized measure of life's necessities" and that such conditions posed a "substantial risk of serious harm" to Farmer,[6] he has failed to allege that any defendant named in this lawsuit was deliberately indifferent to the conditions he describes. *See id.* at 560-61. To the contrary, by Plaintiff's account of events, TDCJ officials moved all inmates out of the solitary confinement unit within twenty-four hours

---

[5] *See id*. ("It is well settled that the Constitution does not mandate comfortable prisons, and that prison conditions may be restrictive and even harsh without running afoul of the Eighth Amendment") (internal quotation marks and citation omitted).

[6] Farmer alleges that the conditions in solitary confinement were unacceptable because of broken windows, mold, inadequate heating and cooling, and other conditions.

of an inspector's report to TDCJ of objectionable conditions. He therefore fails to state an Eighth Amendment claim.

To the extent Farmer brings a due process claim regarding his temporary housing in solitary or segregation, he had no constitutionally protected liberty interest in his housing assignment absent "extraordinary circumstances." *See Hernandez*, 522 F.3d at 562; *see Moody v Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988). Classification and cell assignment are matters of prison administration with which courts are reluctant to interfere. The classification of inmates is "a matter of prison administration and management" for which prison official have broad discretion, and "federal courts are reluctant to interfere except in extreme circumstances." *Green v. McKaskle,* 788 F.2d 1116, 1124 (5th Cir. 1986) (internal quotation marks and citation omitted).[7] "Except for some denials of a fundamental right or use of a suspect classification, prison policy can be based on such considerations as administrative convenience, expense or security." *Id.* at 1125. An inmate's confinement in administrative segregation, without more, does not constitute a liberty interest that is protected by the constitutional guarantee of due process. *Hernandez*, 522 F.3d at 562-63; *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (per curiam). *See Sandin v. Conner*, 515 U.S. 472 (1995) ("discipline in segregated

---

[7] *See McCord*, 910 F.2d at 1250 ("It is well settled that prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status") (internal citation, quotation marks, and alteration omitted); *Kahey v. Jones,* 836 F.2d 948, 950 (5th Cir.1988) (federal courts defer to prison administrators concerning day-to-day prison operations).

confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest").

Farmer's claim regarding his housing assignment will be dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

### F.     Disciplinary Case

Plaintiff alleges that Officer Croman violated his constitutional rights at his disciplinary hearing regarding his alleged failure to follow instructions on the night he was injured. In particular, he claims that Croman refused to call witnesses and was "deliberately indifferent" to the unsafe conditions to which he had been subjected at the time of injury (Dkt 1, at 3, 5). He filed a grievance and, on April 21, 2015, Warden Reescano overturned the conviction (*id.* at 3). Farmer maintains that the reversal demonstrated that the charges against him for refusing an order were "false" (*id.*). He requests compensatory and punitive damages against Lieutenant Croman and Warden Reescano (*id.* at 8).

An inmate's rights in the prison disciplinary setting are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). Under the Supreme Court's two-step analysis for procedural due process claims, the courts first examine "whether there exists a liberty or property interest which has been interfered with by the State," and next consider "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010) (citing U.S. Const. amend. XIV, § 1, cl. 3), *decision clarified on denial of reh'g,* No. 09-50367, 2010 WL

6511727 (5th Cir. Oct. 19, 2010) (internal quotation marks and citation omitted). Therefore, prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin*, 515 U.S. at 487; *Toney v. Owens*, 779 F.3d 330, 336 (5th Cir. 2015). A Texas prisoner cannot demonstrate a due process violation in the prison disciplinary context without first showing that (1) he was eligible for early release on the form of parole known as mandatory supervision; and (2) the disciplinary conviction at issue resulted in a loss of previously earned good-time credit. *See Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000).

In this case, Farmer was found guilty in a disciplinary proceeding of failing to comply with an order to clear the door on January 31, 2015 and was sentenced to loss of ten days commissary privileges and ten days of property privileges (Dkt. 1-1, at 3). The Fifth Circuit has recognized that sanctions such as these, which are "merely changes in the conditions of [an inmate's] confinement," do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997); *see Malchi*, 211 F.3d at 958 ("Clearly, [the inmate's] thirty-day loss of commissary privileges and cell restriction do not implicate due process concerns"). Therefore, Farmer has not demonstrated a constitutionally protected liberty interest in the challenged disciplinary proceeding, and his due process claim fails. *See Meza*, 607 F.3d at 399.

Farmer's due process claim will be dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

### G. Claims against Supervisory Officials

Farmer alleges that Director Davis and Warden Reescano are liable for all of his claims under 42 U.S.C. § 1983 because they are legally responsible for the operation of the Stringfellow Unit and for the welfare of all inmates at the unit. To the extent Farmer alleges claims against Director Davis or Warden Reescano in their supervisory capacities, he fails to state a claim upon which relief can be granted. A supervisory official is not liable under Section 1983 for the actions of subordinates on any theory of vicarious liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-95 (1978) (holding that supervisory officials cannot be held vicariously liable for their subordinates' actions under Section 1983); *see Iqbal*, 556 U.S. at 677 ("'[S]upervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Supervisory officers . . . cannot be held liable under § 1983 for the actions of subordinates . . . on any theory of vicarious liability."). Supervisory officials can be held liable under Section 1983 only if the plaintiff demonstrates (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation. *See Evett v. Deep East Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003). Farmer has not alleged facts supporting liability under either theory. Moreover, because all of his claims have been dismissed for failure to state a claim upon which relief may be granted, his claims against supervisory officials also must fail.

## IV. CONCLUSION

For the reasons stated above the Court **ORDERS**:

1. The Attorney General's motion to seal the *Martinez* report and its exhibits (Dkt. 29) is **GRANTED**.

2. Plaintiff's motion to compel production of additional documents (Dkt. 31) is **DENIED**.

3. All of Plaintiff's claims are **DISMISSED with prejudice** under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

4. **The Clerk will provide a copy of this Order to the plaintiff and to the Manager of the Three-Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.**

The Clerk will provide a copy of this order to the parties and to counsel for *amicus curiae*, the Office of the Texas Attorney General.

SIGNED at Galveston, Texas, this 26th day of November, 2018.

_____
George C. Hanks Jr.
United States District Judge